UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

REGINALD MURPHY,                          )
                                          )
        Plaintiff,                        )
                                          )
    v.                                    )        No.   4:09CV2105 JCH
                                          )                        (TIA)
MICHAEL J. ASTRUE,                        )
COMMISSIONER OF SOCIAL SECURITY,          )
                                          )
        Defendant.                        )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. The

case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. §

636(b). The suit involves applications for Disability Insurance Benefits under Title II of the Social

Security Act and Supplemental Security Income under Title XVI of the Act.

I.      **Procedural History**

On April 20, 2006, Claimant filed Applications for Supplemental Security Income

payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq,(Tr.

61-63)[1] and Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr.

64-66) alleging disability since December 1, 2005 due to back problems and HIV positive. The

applications were denied (Tr. 41-45), and Claimant subsequently requested a hearing before an

Administrative Law Judge (ALJ), which was held on January 23, 2008. (Tr. 47, 17-33). In a

decision dated April 11, 2008, the ALJ found that Claimant had not been under a disability as

---

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer.
(Docket No. 12/filed March 11, 2010).

defined by the Social Security Act. (Tr. 7-16). After considering the letter of contentions from counsel, the Appeals Council denied Claimant's Request for Review on November 9, 2009. (Tr. 1-4, 129-31). Thus, the ALJ's decision is the final decision of the Commissioner.

## II.    Evidence Before the ALJ

### A.    Hearing on January 23, 2008

#### 1.    Claimant's Testimony

At the hearing on January 23, 2008, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 19-32). At the time of the hearing, Claimant was forty-four years of age. (Tr. 20). Claimant's date of birth is June 16, 1963. Claimant stands at five feet seven inches and weighs approximately 135 pounds. Claimant is right-handed. (Tr. 20). Claimant is married and has two dependent children ages seven and twelve living with him in an apartment. (Tr. 21). Claimant has a GED. (Tr. 21). Claimant's wife receives child support. (Tr. 31).

Claimant last worked in 2005 at Ameristar Casino as a cook, but he stopped working because he experienced problems with his back. (Tr. 21). In his last position, Claimant did not work beyond the probationary period of sixty days because of his absenteeism. (Tr. 31-32). In the last fifteen years, Claimant testified that he has worked either as a cook or at factory job as an assembly line worker. (Tr. 21-22). Claimant worked as a janitor with his pastor and at a car wash. (Tr. 22). Both jobs required him to be primarily on his feet. (Tr. 22). Claimant testified that he has also worked as a dock hand at a trucking firm loading trucks. (Tr. 22-23). Claimant sometimes ran a forklift on the loading dock in that job. (Tr. 23).

Claimant testified that his back pain prevents him from being able to work. (Tr. 23). Since 2005, Claimant has experienced constant, lower back pain every day. (Tr. 23-24). His

back pain precludes him from standing or sitting for a long period of time. (Tr. 24). His pain limits his ability to do housework or activities with his children or family. (Tr. 24). Claimant testified that he now is experiencing leg pains and cramps, but he is uncertain whether his back pain has caused his leg problems. (Tr. 28). Claimant testified that Dr. Travers suggested he use a cane. (Tr. 28-29). Claimant testified that he has no other medical problems that would prevent him from working, (Tr. 24).

Claimant testified that he can stand for an hour before he experiences chronic, excruciating back pain. (Tr. 24). Claimant takes pain medication. (Tr. 24). If he sits for a long period of time, his back starts to cramp and stiffen up. (Tr. 25). Claimant testified that two hours is the limit on his ability to sit without pain. After two hours of sitting, Claimant takes pain medication and lies down. (Tr. 25). Claimant testified that he can reach in front but reaching overhead or bending would bother his back. (Tr. 27). Claimant testified that he could walk a couple of blocks to meet his children at the bus stop. (Tr. 27).

Claimant testified that he is being treated at the BJC Clinics. (Tr. 27). The MRI in December showed a ruptured disc, a slipped disc, and some deterioration of some parts of his spine. (Tr. 27-28). Claimant testified that no doctor has discussed surgery but the doctors are trying to avoid surgery. (Tr. 28). Claimant testified that his pain medications make him dizzy and sleepy. (Tr. 26).

As to his daily activities, Claimant testified that he does the basic housework, the dishes and laundry and cleaning the house. (Tr. 25). The children assist in washing the dishes, and his wife usually helps Claimant finish the wash. (Tr. 26). Although Claimant used to do most the cooking, his wife does most of cooking, because he is sleeping around dinner time. (Tr. 26).

Claimant has not driven a car in the last two years because driving requires sitting, and his pain medication makes him impaired. (Tr. 29). Claimant testified that his wife does most of the driving. Claimant testified that he stays at home most of the time and attends church services for an hour and a half on Sundays. (Tr. 29). Claimant serves as the Deacon of his church, but he can no longer visit the other congregation members. (Tr. 30). Claimant sometimes misses church because of his pain. Claimant testified that he sleeps most of the day because of his medication. (Tr. 31). His sleep at night is interrupted by his medication and visits to the restroom. (Tr. 31).

### 2. Open Record

At the beginning of the hearing and at the request of counsel, the ALJ determined that the record would be held open for thirty days so that Claimant's counsel could submit additional medical records, Claimant's most recent MRI. (Tr. 19). The ALJ explained that after the additional medical evidence was submitted to him, he would decide the case. A review of the record shows that counsel timely submitted additional medical evidence, the MRI of Claimant's spine completed on January 2, 2008 to the ALJ before he issued a decision denying Claimant's claims for benefits. (Tr. 312-13).

### 3. Explanation of Determination

In the Explanation of Determination, the disability examiner explained the denial of benefits as follows:

> Claimant is a 42 year old male alleging Back problems, hiv positive. Clmt has a RFC with limitation equal to a limited light, see RFC. Clmt past SGA work mis described as at least light by clmt and DOT. Clmt may not be able to perform past work as he describes or as it is described in DOT but due to age - 42 and education - GED, clmt retains ability to perform other work. Jobs clmt retains ability to perform are, Patcher (house appl) 723.687-010; Shank Taper (boot and shoe) 788.687-114; Plastic Design Applier (boot and shoe) 690.686-046.

Therefore, a denial to other work is recommended.

(Tr. 35).

### 4. Forms Completed by Claimant

In the Pain Questionnaire completed on May 15, 2006, Claimant indicated that his pain does not keep him from bending, squatting, stooping, reaching, standing, or sitting, but the pain limits his movements for all positions stated. (Tr. 98).

In the Function Report - Adult dated June 15, 2006, Claimant listed attending church twice a week and school activities on behalf of his children as his social activities. (Tr. 111). Claimant indicated that he is not able to lift/climb/kneel/bend at all and standing and walking are limited to no more than ten minutes. (Tr.112).

### 5. Post-Hearing Medical Records

The undersigned finds that the additional medical record, the MRI dated January 2, 2008, submitted by Claimant after the hearing does not alter the outcome of this opinion. (Tr. 312-13). Indeed, the undersigned notes that this record was part of the record before the Appeals Council prior to the Appeals Council finding no basis for changing the ALJ's decision and denying Claimant's request for review of the ALJ's decision. (Tr. 1-5). Thus, the undersigned finds that the MRI images add nothing new to the record regarding Claimant's pain and alleged disability.

## III. Medical Records

On February 4, 2005, Dr. Richard Groger of the Infectious Disease Clinic at Washington University School of Medicine evaluated Claimant. (Tr. 209). Claimant reported a past history of HIV which was diagnosed in 1995 and currently being on antiretroviral therapy comprising of Combivir and Sustiva. Claimant reported not taking his HIV medications for the last month

because of side effects. Claimant reported smoking one package of cigarettes a day and occasionally using marijuana. Claimant reported not currently working and seeking employment. (Tr. 209). Examination showed no cervical lymphadenopathy. (Tr. 210). Dr. Groger noted that Claimant has been noncompliant with his HIV medications because of the side effects of nausea and cloudiness of his mind. Dr. Groger decided to change Claimant's medications to Truvada and boosted atazanavir. (Tr. 210).

On March 25, 2005, Claimant returned for a regularly scheduled outpatient visit at the Infectious Disease Clinic. (Tr. 206). Claimant reported only missing one dose of medication. (Tr. 206). Claimant reported not working. (Tr. 207). Examination revealed some slight tenderness to palpation in the left upper quadrant. Dr. Groger noted that Claimant had been previously noncompliant with his HIV medications due to some nausea and depression. (Tr. 207). Dr. Groger noted that Claimant has only missed one dose of his new medications since his last visit. (Tr. 207).

On April 11, 2005, Claimant reported chest pain to the treating doctor in the emergency room at Christian Hospital NE. (Tr. 155-56). Claimant reported having HIV and Hepatitis C as his past medical history. (Tr. 156). The Discharge Laboratory Cumulative Report showed positive screening for cannabinoids. (Tr. 172). The MRI of Claimant's brain conducted on April 12, 2005, showed degenerative cervical spine changes with kyphosis and moderate central canal stenosis at multiple levels with unconvertebral joint hypertrophy causing foraminal stenosis at multiple levels. (Tr. 183). The MRI of Claimant's cervical spine conducted on April 12, 2005 showed similar results. (Tr. 184-85). In the Discharge Report dated April 13, 2005, Claimant's history of present illness listed his history of HIV and left chest pain. (Tr. 180). In the social

history section, Claimant is positive for cigarette smoking and has a history of marijuana use. (Tr. 180).

On May 6, 2005, Claimant returned for a regularly scheduled visit at the Infectious Disease Clinic. (Tr. 202). Claimant reported missing three doses of his medications over the last week due to his work schedule. Claimant reported some back pain chronic in nature. Claimant reported that he stopped smoking and discontinued marijuana use although his drug screen test upon admission was positive for marijuana. (Tr. 202). Claimant reported working as a custodian. (Tr. 203). Dr. Keith Woeltje determined to continue the current regimen of Truvada and boosted Atazanavir and counseled Claimant about the importance of 100% adherence to his medications to prevent a drug resistant virus. (Tr. 204). With respect to Claimant's chronic back pain, Dr. Woeltje prescribed Motrin 600 mg for discomfort. (Tr. 204). In a follow-up visit on May 27, 2005, Dr, Groger found Claimant to be noncompliant at all with his HIV antiretroviral medication regimen noting his most recent HIV viral load and CD4 count to be 233 on May 6, 2005 decreased from 654 on April 12, 2005. (Tr. 200). Claimant returned seeking stronger pain medication for his right shoulder pain. (Tr. 200). Dr. Groger counseled Claimant to adhere to his medication regimen. (Tr. 201). Dr. Groger prescribed Ultram for his right shoulder pain. (Tr. 201).

The lumbar spine MRI dated December 21, 2005 revealed mild lumbar spondylosis worse at L4-L5 and L5-S1 and a new central disc herniation at L4-L5. (Tr. 176, 230).

In the undated Infectious Disease Clinic Note, Dr. Jessica Grubb noted how Claimant has been off his medications since August 2005, and she restarted his HAART and draw CD4 count and HIV viral load on that day. (Tr. 198). Claimant reported acute low back pain. Dr. Grubbs

noted that a letter had been sent to Claimant's employer "for patient to remain off work and to return to work on Thursday, December 22, 2005" and Claimant agreed with the plan. Examination revealed no tenderness with palpation over the entire spinal column.  (Tr. 198).

In the Infectious Disease Clinic Note of January 13, 2006 at Washington University School of Medicine, Claimant returned for a follow-up visit after his previous visit in May 2005. (Tr, 194).  Claimant reported being off his HAART since the middle of the summer and in December 2005, he was restarted on his medications of boosted Reyataz and Truvada.  Claimant reported discontinuing his medications because he felt groggy.  Claimant was restarted on the same medications and reported some grogginess but he is 100% compliant.  Claimant reported his low back pain "has improved remarkably with noting only some pressure though he has had to quit his job and is currently seeking work having worked as a cook."  (Tr. 194).  Claimant reported continued tobacco use and occasional marijuana use. (Tr. 194).  Examination revealed no spinal or low back tenderness.  (Tr. 195).  In the assessment, Dr. Nareg Roubinian noted how Claimant restarted his HAART and did not report any adverse reactions.  His history of low back pain had improved since his last visit, but Claimant reported some low pressure causing him to be unable to work.  (Tr. 195).

In the Infectious Disease Clinic Note of April 14, 2006, Claimant returned for an office visit.  (Tr. 192).  Claimant reported missing approximately four to six doses of his current medicine regimen of Reyataz and Truvada in the last month.  Claimant reported a history of low back pain and an appointment on May 1, 2006 for further evaluation.  Claimant reported his gait to be steady, and he is able to walk up and downstairs.  (Tr. 192).  In the assessment, Dr. Steven Lawrence encouraged Claimant to place his medications next to his toothbrush so that he would

remember to take his medications every night. (Tr. 193).

On May 1, 2006, Claimant reported lower back pain at the Grace Hill Neighborhood Health Center. (Tr. 231). The assessment included low back pain with paresthesias, HIV, and nausea. (Tr. 232). The treating doctor prescribed Motrin and directed Claimant to return in six weeks. (Tr. 232).

Claimant returned to the Infectious Disease Clinic on May 19, 2006 and reported 100% adherence to medication regimen. (Tr. 289). Claimant reported continued use of a walking cane. (Tr. 289). Dr. Grubb decided to continue with the same medications with boosted Reyataz and Truvada. (Tr. 290). The radiology report of his lumbar spine showed the grade 1 retrolisthesis of L5 upon S1 to be stable and a small central disk herniation superimposed on a bulging disk. (Tr. 293). The x-rays further showed the mild lumbar spondylosis worse at L4-L5 and L5-S1. (Tr. 294).

In the Physical Residual Functional Capacity Assessment completed on June 16, 2006, V. Washburn,a medical consultant, listed Claimant's primary diagnosis to be lower spine degenerative changes and his secondary diagnosis to be HIV. (Tr. 236). The consultant indicated that Claimant can occasionally lift twenty pounds, frequently lift ten pounds, and stand and walk at least two hours in an eight-hour workday. (Tr. 237). The consultant noted that Claimant can sit about six hours in an eight-hour workday and has unlimited capacity to push and/or pull except as otherwise noted for lifting/carrying. (Tr. 237). As the evidence in support, the consultant noted how Claimant reported in January 2006 his lower back pain had improved remarkably, and examination showed no spinal tenderness or low back tenderness. Further, the MRI results showed degenerative changes, stable grade I retrolisthesis, mild lumbar spondylosis worse at L4-

L5 and L5-S1, and central disc herniation present at L4-L5. (Tr. 237). During a follow-up visit, Claimant denied inability to walk up and downstairs and reported a steady gait. (Tr. 238). With respect to postural limitations, the consultant noted Claimant is limited to occasionally kneeling, crouching, and crawling and frequently climbing, balancing, stooping, and crawling. (Tr. 239). With respect to manipulative limitations, the consultant indicated that Claimant is limited to reaching all directions and unlimited in handling, fingering, and feeling. (Tr. 239). The consultant indicated that Claimant has no established visual, communicative, or environmental limitations. (Tr. 239-40). The consultant found Claimant to be partially credible at best citing his reporting of limitations and symptoms to be inconsistent as follows:

> Func. report - In 3368 clmt reports can't stand for long or walk to[sic] far and if I lift anything over 20 lbs. it hurts. If function report less than a month later clmt reports he cannot lift at all. Clmt reports he cooks breakfast for his kids and help them off to school. Clmt reports he cooks complete meals weekly says it takes more time due to ability to stand short periods of time. Clmt reports he does cleaning and laundry taking between 4-5 hours he says he cleans daily and does laundry twice a week. He reports a continues[sic] dull pain in lower back. Clmt not on very strong meds. Clmt reports are not consistent in 3368 says can lift 20 lbs then a few weeks later reports in ADL's can't lift at all. 4/06 he reports himself he has steady gait and can walk up and down stairs. Clmt given benefit of doubt and limited to 2 hours standing/walking. Clmt func report at least sed work and is partially credible at best. Clmt could probably perform light work but again clmt given benefit of doubt.

(Tr. 241).

On July 14, 2006, Claimant returned to the Infectious Disease Clinic and reported no side effects from his current HIV medications. (Tr. 248). Claimant complained of chronic back pain. (Tr. 248). Claimant smokes a half of package of cigarettes a day and uses marijuana one to two times a week. (Tr. 249). Claimant reported missing one dose of his HIV medications the week before and three doses in the last month. (Tr. 250). Dr. Kristen Mondy found Claimant to be

doing well on his current HIV regimen although he continued to have a persistent level of viremia most likely caused by his missing doses of antiretroviral therapy. Dr. Mondy counseled Claimant on the importance of taking the antiretroviral medications on a daily basis and not missing any doses as this can promote resistance. (Tr. 251). Claimant scheduled to receive follow-up treatment for his herniated and bulging disk with the Grace Hill Clinic the following month. (Tr. 251).

On August 24, 2006, Claimant reported 100% adherence and no adverse side effects to his HIV medication regimen. (Tr. 245). Claimant reported chronic low back pain and receiving a referral for treatment at Barnes-Jewish Hospital Orthopedic Department. Claimant reported medicating himself as needed with hydrocodone. (Tr. 245). Dr. Hilary Babcock noted that Claimant smokes a package of cigarettes every day with daily marijuana use. (Tr. 246). Examination showed no CVA tenderness bilaterally. Dr. Babcock observed Claimant to have a steady gait and to walk with a limp to his left side. Dr. Babcock found Claimant's HIV infection to be well controlled with the use of Truvada and boosted atazanavir and determined to continue his current medication regimen. (Tr. 246). Dr. Babcock encouraged Claimant to continue follow-up treatment with the Grace Hill Clinic while he waits for his scheduled appointment at Barnes-Jewish. (Tr. 247).

In a follow-up visit at the Infectious Disease Clinic on October 13, 2006, Claimant reported that he is tolerating his medicine regimen of boosted Reyataz and Truvada well. (Tr. 242). Claimant reported missing two doses of his antiretroviral medications. Claimant complained of chronic back pain and noted he is scheduled for follow-up treatment at the Orthopedic Clinic on November 5, 2006. The September 5, 2006 MRI of his lumbar spine

revealed stable grade 1 retrolisthesis at L4 through S1 with associated bulging and some stenosis as well as degenerative joint disease. Claimant takes Naproxen and Robaxin for his chronic back pain. Dr. Michael Rich noted that Claimant has a normal immune system and is asymptomatic. Claimant continued to smoke one package of cigarettes a day and to use marijuana. (Tr. 242). Dr. Rich continued Claimant's medication regimen. (Tr. 243).

On January 22, 2007, Claimant received treatment at St. Louis ConnectCare and reported having chronic low back pain and spinal stenosis of the lumbar region and being HIV positive. (Tr. 261-63). The treating doctor noted that surgery had not been indicated at that time as Claimant had no obvious weakness or signs of nerve damage. (Tr. 262). The treating doctor indicated that Claimant should return for follow-up treatment in three months. (Tr. 265).

On March 6, 2007, Claimant received treatment as a new patient at the Barnes-Jewish Clinic and completed a health risk screening. (Tr. 281). Claimant's chief complaint was lower back pain with some burning in the lumbar region. (Tr. 302). Claimant takes Naprosyn and hydrocodone for pain. Claimant reported being able to walk long distances without significant lower extremity pain. (Tr.302). Claimant reported not having difficulty walking or with activities of daily living including cooking, cleaning, shopping and driving. Claimant complained of constant pain in his lower back. (Tr. 281). Claimant reported still smoking. (Tr. 283). The treating doctor prescribed Naproxen and hydrocodone and ordered Claimant to undergo physical therapy for back strengthening and flexion exercises. (Tr. 285, 303).

On March 14, 2007, Claimant received treatment at the Grace Hill Neighborhood Health Center for his chronic back pain. (Tr. 311).

In a follow-up visit on July 23, 2 007 at St. Louis ConnectCare, Claimant complained of

chronic back pain. (Tr. 267). Claimant reported using a cane for approximately one year. (Tr. 267). The treating doctor's diagnosis included somatoform back pain. (Tr. 268). The doctor noted that Claimant had no weakness, and he was able to squat and hop with no radiculopathy with straight leg raising. MRI viewed as stable with multilevel degenerative joint disease and mild central canal stenosis. (Tr. 267).

In the follow-up visit at Barnes-Jewish Hospital on August 7, 2007, Claimant reported his back pain becoming a little worse but otherwise no significant changes. (Tr. 278). Claimant takes Naproxen and hydrocodone with minimal relief. Claimant reported being able to walk without difficulty. The x-rays taken showed no significant degenerative changes of his lumbar spine. A review of the MRI taken September 2006 showed some very mild disc bulging L4-L5 and L5-S1. (Tr. 278). The MRI of August 7, 2007, showed a normal lumbar spine. (Tr. 274). Dr. Sumeet Garg found Claimant to have discogenic back pain and prescribed a six-week course of physical therapy as treatment. (Tr. 278). Dr. Garg noted that Claimant has limited lumbar flexibility and opined that improving his flexibility and strengthening his lumbar spine should help his symptoms. (Tr. 278).

In a follow-up visit on September 12, 2007, Claimant reported lower back pain to the doctor at Grace Hill Neighborhood Centers. (Tr. 304-05, 307-08). Claimant received a refill of his prescriptions. (Tr. 304-05, 307-08).

The MRI completed on January 2, 2008 showed little change in the appearance of grade 1 retrolisthesis of L5 on S1 and L4 on L5 with a small area central disc herniation superimposed on mild diffuse disc bulging associated with an annular tear with mild bilateral facet anthopathy and mild central canal stenosis. (Tr. 312). At the L5-S1, there was a grade 1 retrolisthesis with a

mild to moderate disc bulging resulting in mild central canal stenosis and mild to moderate bilateral neural foraminal stensosis. (Tr. 313). In the impression, Dr. Charles Lieu found stable multilevel degenerative changes most pronounced at L5-S1. (Tr. 313).

## IV.    The ALJ's Decision

The ALJ found that Claimant met the special earnings requirements as of December 1, 2005, the alleged onset of disability, and continues to meet them through the date of the decision. (Tr. 15). The ALJ found that Claimant has not engaged in substantial gainful activity since December 1, 2005. The ALJ found that the medical evidence establishes that Claimant has degenerative disc disease of the lumbosacral spine and cervical spine and Human Immunodeficiency Virus ("HIV") controlled by medication, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that Claimant's allegations of impairments producing symptoms and limitations of sufficient severity to prevent the performance of any sustained work activity are not credible. (Tr. 15). The ALJ found that Claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting or carrying more than ten pounds frequently or more than twenty pounds occasionally. (Tr. 16). Claimant has no credible, medically-established mental or other nonexertional limitations. The ALJ determined that Claimant is unable to perform any past relevant work. Claimant has the residual functional capacity for a full range of light work. The ALJ noted that Claimant is a younger individual with a GED high school equivalency certificate. (Tr. 16). Claimant has acquired and usable skills transferable to the skilled and semi-skilled functions of other work. (Tr. 16).

Considering Claimant's age, education, work experience, and exertional functional capacity for light work, the ALJ determined that Claimant can perform substantial gainful activity and is not disabled. (Tr. 16). The ALJ found that Claimant was not under a disability at any time through the date of the decision. (Tr. 16).

## V.    Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is

not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is

found to have a severe impairment the ALJ proceeds to step three in which he must determine

whether the impairment meets or is equal to one determined by the Commissioner to be

conclusively disabling.  If the impairment is specifically listed or is equal to a listed impairment,

the claimant will be found disabled.  20 C.F.R. § 404.1520(d).  If the impairment is not listed or is

not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the

claimant is capable of doing past relevant work.  If the claimant can still perform past work, she is

not disabled.  20 C.F.R. § 404.1520(e).  If the claimant cannot perform past work, the ALJ

proceeds to step five in which the ALJ determines whether the claimant is capable of performing

other work in the national economy.  In step five, the ALJ must consider the claimant's "age,

education, and past work experience."  Only if a claimant is found incapable of performing other

work in the national economy will she be found disabled.  20 C.F.R. § 404.1520(f); see also

Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be

affirmed if they are supported by "substantial evidence on the record as a whole."  Pearsall, 274

F.3d at 1217.  Substantial evidence has been defined as "less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a decision."  Id.  The court's review

"is more than an examination of the record for the existence of substantial evidence in support of

the Commissioner's decision, we also take into account whatever in the record fairly detracts

from that decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The Court will

affirm the Commissioner's decision as long as there is substantial evidence in the record to

support his findings, regardless of whether substantial evidence exists to support a different

conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to
   exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the
   claimant's impairments.

6. The testimony of vocational experts when required which
   is based upon a proper hypothetical question which sets forth the claimant's
   impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly formulate his residual functional capacity and failed to obtain evidence from a vocational expert. Specifically, Claimant contends that the ALJ determination that he is capable of performing the full range of light work lacks any medical support.

A. Residual Functional Capacity

With regard to the ALJ's determination of Claimant's RFC, the undersigned finds that the ALJ properly assessed the medical evidence and Claimant's credibility. "The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972,

976 (8th Cir. 2004). It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003); McKinney v. Apfel, 228 F.3d 860 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individuals's strengths and weaknesses." SSR 85-16. SSR 85-16 further delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to others *over a period of time*" and that the "frequency, appropriateness, and independence of the activities must also be considered." SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218. In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ must do more than rely on the mere invocation of Polaski to insure

safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190. 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluations of the entire record." )

Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)). Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Similarly, in making a finding of residual functional capacity, an ALJ may consider non-medical evidence, although the residual functional capacity finding must be supported by some medical evidence. See Lauer, 245 F.3d at 704.

The medical evidence showed that Claimant's viral load to be undetectable and his

immune system to be healthy in August 2006 despite periodic noncompliance with HIV medication regimen on April 14 and July 14, 2006. With respect to his back pain, the MRI of December 2005 showed a stable grade I retrolisthesis of L5 on S1, mild lumbar spondylosis, and central disc herniation at L4-l5. The following month Claimant that his back pain had improved and examination showed no back tenderness. On March 6, 2007during health risk screening as a new patient at the Barnes-Jewish Clinic, Claimant reported being able to walk long distances without significant lower extremity pain and not having difficulty walking or with activities of daily living including cooking, cleaning, shopping and driving. Examination in August 2007 showed Claimant could walk without difficulty. The MRI completed on January 2, 2008, revealed primarily mild multilevel degenerative changes with mild to moderate disc bulging at L5-S1.

The ALJ's determination of Claimant's RFC is supported by substantial evidence in the record. Likewise, the ALJ noted several inconsistencies within the record, and he pointed out the lack of supporting objective medical evidence. The ALJ opined that the medical record does not show that any physician imposed any functional restrictions of Claimant or found him to be totally disabled. Indeed, the ALJ highlighted the lack of documentation in the treatment records of restrictions upon Claimant's functional capacity ever placed on Claimant. The ALJ specifically noted that no doctor had placed any specific long-term limitations on Claimant's abilities to stand, sit, walk, bend, lift, carry, or do other basic exertional activities. The ALJ also properly considered the Polaski factors in concluding that Claimant's subjective complaints of pain and discomfort are not supported by the objective medical evidence inasmuch as Claimant failed to follow suggested treatment and failed to receive consistent treatment for his pain. The ALJ listed

facts from Claimant's hearing testimony regarding the <u>Polaski</u> factors and the medical record that reflected upon Claimant's ability to perform sedentary work such as the lack of pain relief medications, lack of ongoing medical treatment, gap in medical treatment for his back pain, and failure to follow prescribed course of treatment and to adhere to his HIV medicine regimen. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. <u>See</u> <u>Samons v. Astrue</u>, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, the absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant disabled or imposing any functional limitations, his failure to seek regular and sustained treatment, his gap in medical treatment, his lack of strong pain medications, and his inconsistent reporting of his activities and abilities. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform a full range of light work. The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform a full range of light work. Thus, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant has the residual functional capacity to perform a full range of light work. The ALJ thus concluded that Claimant could not perform any of his past relevant work but would be able to meet the demands of light work.

Absent a showing of deterioration, working after the onset of an impairment is some

evidence of an ability to work.  See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability).  Indeed, at the hearing Claimant testified that he stopped working because of his absenteeism, not because of his impairments. Claimant also reported to be currently seeking employment in the treatment note dated January 13, 2006. Accordingly, the undersigned notes how the record establishes that Claimant ceased work activity due to other reasons than impairment-related reasons as another factor in support of Claimant's ability to work.

The substantial evidence on the record as a whole supports the ALJ's decision.  Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole.  Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

B.     Vocational Expert Testimony

Claimant contends that the ALJ's decision is not supported by substantial evidence

because it lacks vocational expert testimony.  Specifically, Claimant contends that the ALJ ignored evidence of a somatoform disorder  This claim is without merit.

Generally, when a claimant has a nonexertional impairment, such as pain, the ALJ must obtain testimony from a vocational expert in order to satisfy the Commissioner's burden at step five of the sequential evaluation process.  Hall v. Chater, 62 F.3d 220, 224 (8th Cir. 1995). "However, the Guidelines still may be used where the nonexertional impairments 'do[] not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities.'"  Baker v. Barnhart, 457 F.3d 882, 894 (8th Cir. 2006) (Ellis v. Barnhart, 329 F.3d 988, 996 (8th Cir. 2005)).  Where, as here, the ALJ properly discredits the Claimant's complaint of a nonexertional impairment, the ALJ is not required to consult with a vocational expert and may properly rely on the vocational guidelines at step five.  Hall, 62 F.3d at 224.; Naber v. Shalala, 22 F.3d 186, 189-90 (8th Cir. 1994).

As outlined above, the ALJ sufficiently discredited Claimant's complaints of pain.  "When a claimant's subjective complaints of pain are explicitly discredited for legally sufficient reasons articulated by the ALJ, the Secretary's burden [at the fifth step] may be met by use of the [Medical -Vocational Guidelines]."  Naber, 22 F.3d at 189-90 (quotations omitted).  Thus, the ALJ committed no error by using the Medical-Vocational Guidelines to determine whether Claimant was disabled.  The ALJ noted how an attending physician in July 2007 indicated that Claimant's "back pain was likely somatoform in origin."  (Tr. 13).  A review of the medical record shows that this notation is an isolated finding.  No other physician since the date of Claimant's alleged disability onset found Claimant's back pain due to anything other than mild to moderate findings.  Further, Claimant's complaints of pain were inconsistent with the record.  For instance,

his complaints of severe back pain were inconsistent with the medical records which consistently characterized his gait as normal, strength in arms and legs as normal, and straight leg raising as negative and showing Claimant had no difficulty with walking, getting dressed, walking up or down stairs, or daily activities such as cooking, cleaning, shopping, and driving. See Jones v. Astrue, 619 F.3d 963, 975 (8th Cir. 2010) (factor, albeit not the only one, to be considered when evaluating a claimant's subjective complaints is their lack of support in the objective medical evidence). Those complaints, including his testimony he could only walk two blocks to meet his children at the school bus, are also inconsistent with his reporting no difficulty walking long distances without significant pain. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (quoting Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). Also inconsistent with Claimant's complaints was the lack of any functional restrictions placed on him by any of his physicians. See Moore v. Astrue, 572 F.3d 520, 525 (8th Cir. 2009). The ALJ having explicitly discredited Claimant's complaints and having given good reasons for doing so, the undersigned will defer to that determination. See Jones, 619 F.3d at 975. Consequently, because the ALJ did not err in his adverse credibility determination, the ALJ did not err in relying on the Medical-Vocational Guidelines.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning, 958 F2d at 821.

Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that Claimant's complaint be dismissed with prejudice.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this   2nd    day of March, 2011.